**Opinion filed December 1, 2014**



### In The

# Eleventh Court of Appeals

_____

### No. 11-14-00155-CV

_____

## IN THE INTEREST OF A.J.R., E.J.R.H., AND K.M.J.H., CHILDREN

### On Appeal from the 29th District Court

### Palo Pinto County, Texas

### Trial Court Cause No. C45377

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order of termination of the parental rights of the mother of A.J.R., E.J.R.H., and K.M.J.H. and the father of two of those children: E.J.R.H. and K.M.J.H.[1]  Both parents appeal and have filed a joint brief challenging the sufficiency of the evidence.  We affirm.

---

[1]We note that the parental rights of A.J.R.'s father were not terminated and that A.J.R.'s father was awarded managing conservatorship of A.J.R.  A.J.R.'s father has not appealed.  Therefore, for ease of reference in this opinion, we refer to the father of E.J.R.H. and K.M.J.H. as "the father" and as the father included in our use of the term "parents."

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds

2

for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the parents had committed three of the acts listed in Section 161.001(1): those found in subsections (D), (E), and (O). Specifically, the trial court found that both parents had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being; that the parents had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; and that both parents had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(2), that termination of both parents' parental rights would be in the best interest of their children.

## II. *Issues*

In their first issue, the parents challenge the legal and factual sufficiency of the evidence with respect to the trial court's findings under Section 161.001(1). In the second issue, they challenge the legal and factual sufficiency of the evidence with respect to the trial court's best interest findings.

## III. *Evidence and Analysis*

The evidence at the final hearing showed that the children—whose approximate ages at the time of removal were five years old, fifteen months old, and three and one-half months old—were removed by the Department after receiving a report regarding the medical neglect of A.J.R. Based on that report, the

3

Department's investigator, Meagan Lusk, went to the family's residence on June 12, 2013. When she arrived, police officers were confiscating a large quantity of stolen merchandise from the parents' apartment. Lusk smelled a very strong odor of human feces and urine as she walked up to the apartment. She said that clothes and trash were scattered throughout the entire apartment. A stolen pellet gun was next to E.J.R.H. on the couch. A bottle of aspirin was within reach of the children. Human feces were under the children's table and on the walls inside the apartment. As she was looking at the children's table, Lusk noticed a half-eaten cake beside a piece of human feces. K.M.J.H.'s basinet had human feces smeared all over it. Fifteen to twenty dirty diapers were scattered throughout the apartment. A.J.R. and E.J.R.H. had been sleeping in the floor next to dirty diapers. E.J.R.H. and K.M.J.H. had "pretty severe diaper rashes." The second bedroom of the two-bedroom apartment was so full of trash and clothes and other stuff that the door would not open. The kitchen was very filthy and was infested with flies. The mother testified that, at the time of removal, she had "hit rock bottom" and had allowed her apartment to become a "wreck" or a "disaster zone." The father also admitted that the apartment was a wreck and was not conducive to raising children. The mother agreed that the condition of the apartment was a health risk to the children. At the time of trial, a felony theft case was pending against the mother, and the father was on probation for felony theft.

Donna Massey, a conservatorship caseworker for the Department, testified that the children were originally removed due to the horrible conditions of the parents' residence. Massey also testified that the mother had not tended to A.J.R.'s medical needs. At the time of removal, A.J.R. had an infection in his eye that needed treatment; it was later determined that A.J.R. had cancer of the eye. The school had requested that A.J.R. be taken to the doctor because of an apparent eye infection; however, according to Lusk, the mother said that she did not feel that

4

was necessary and did not take him to a doctor. A.J.R. missed two months of kindergarten because of the problem with his eye. At the time of trial, A.J.R. had a glass eye and was okay.

Massey explained that, during the pendency of this case, the parents made very little progress even though they completed parenting classes, therapy classes, and anger management. The parents had not obtained stable housing or stable employment, and the father had not obtained a driver's license as required by the terms of the applicable service plan. At the time of trial, the parents relied on their church to pay their rent and bills and give them food every two weeks. The parents had a pattern of relying on the church for food and rent. In the year that this case was pending, the parents failed to obtain and keep a steady job, although there was nothing precluding them from doing so. Every job that they obtained, they lost within a short period of time.

The Department recommended that the parents' rights be terminated. The reasons for that recommendation included the mother's neglect of A.J.R.'s medical needs, the parents' failures with respect to stable employment, and the parents' inability to "remain stable." Massey also testified that she had observed the parents during visitation with the children and that she did not see any bond between the mother and A.J.R. and did not "see a real strong interaction" between the parents and the other two children. The mother disagreed with Massey's assessment; she testified that she and her children were bonded and that it would be in their best interest to be returned to her. The father testified that he was bonded with his children.

Massey testified that A.J.R. had been placed with his father and was doing extremely well in that placement. A.J.R.'s father was meeting all of A.J.R.'s needs, including his special needs related to his eye. The other two children were placed in a foster home and were doing well in foster care. At the time of trial, the

Department had located a possible home for them, which had been "approved depending on the outcome" of the termination proceedings.

The mother testified that, with the help of the church, the parents had obtained a suitable home for the children, which the parents had been living in for three weeks, and that the parents had had a stable place to live for six months. The mother testified that, during the pendency of this case, she had obtained her CNA license and worked for over six months. The mother also testified that, prior to removal, she had taken A.J.R. to the doctor. According to the mother, the doctor had diagnosed A.J.R. as having pink eye, and the mother was treating A.J.R.'s eye with the drops that had been prescribed by the doctor.

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that both parents knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being. FAM. § 161.001(1)(D). Under subsection (D), we examine evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied).

In this case, there was evidence that the conditions of the parents' residence upon initial removal endangered the children. The parents agreed that the conditions of their apartment were unsuitable. The evidence is legally and factually sufficient to support the trial court's finding as to each parent under Section 161.001(1)(D). Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the parents' remaining arguments regarding the sufficiency of the evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1. The parents' first issue is overruled.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of both the father's and the mother's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. We cannot hold that the findings as to best interest are not supported by clear and convincing evidence. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the parents, the plans for the children by the Department, the instability of the parents' home, the stability of the children's placement, and the acts and omissions indicating that the parent-child relationship was not a proper one, we hold that the evidence is sufficient to support the findings that termination of the father's and the mother's parental rights is in the best interest of the children. *See id.* The parents' second issue is overruled.

## IV. *This Court's Ruling*

We affirm the trial court's order of termination.

MIKE WILLSON

JUSTICE

December 1, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.